Brookie, &c., v. Portwood.

CASE 38—PETITION EQUITY—SEPTEMBER 23.

# Brookie, &c., v. Portwood.

### APPEAL FROM ANDERSON CIRCUIT COURT.

1. THE DESTRUCTION OR SUPPRESSION OF A WILL, for the purpose of defeating the rights of others, is a fraud upon the rights of such persons; and when the instrument has been intentionally destroyed or suppressed, every thing will be presumed against the party by whom it has been done.

   An order of the county court rejecting a will, and an agreed judgment of the circuit court dismissing an appeal from that order, and declaring the will null and void, having been obtained by the direct devisees and the executors for the purpose of defeating the rights of contingent devisees, were fraudulent, and the chancellor acted properly in setting aside those fraudulent orders and judgments, and granting a new trial at the suit of one of the executors.

2. AN EXECUTOR WILL NOT BE ESTOPPED from having set aside an order rejecting his testator's will which he has procured by fraud; but a court of equity will rather encourage him to undo the wrong he has done the estate, which he was under a solemn obligation to protect.

ED. M. WALLACE FOR APPELLANTS.

1. In the construction of wills, effect should be given, as far as practicable, to every part of the will, in order that the intention of the testator may be fully carried out. (Baird v. Rowan, 1 Mar., 217; Morse v. Cross, 17 B. M., 740.)

2. Following this rule of construction, the children of Louisa Portwood have no interest in the testator's estate, and, therefore, have no right to prosecute this suit, and the motion to strike out their names as plaintiffs should have been sustained.

3. The court erred in annulling the order dismissing the appeal prosecuted by the widow, because she has no interest in the subject-matter of this controversy, and, moreover. the order having been made at her request. and no fraud having been practiced on her in reference thereto, she is bound thereby.

4. A. D. Portwood has no right to maintain this action, because, in the first place, no fraud was practiced upon him in obtaining the orders which he seeks to annul; and, in the second place, he is estopped from relying on fraud in obtaining those orders, because he was an active agent in obtaining them.

5. The evidence in the record does not establish fraud.   To justify the chancellor in finding the existence of fraud, he must have such evidence as will satisfy the mind to a reasonable degree that fraud has been committed.    (Marksbury v. Taylor, 10 Bush, 523 ; 11 B. M., 111.)

6. As to the law of estoppel.    (Story on Equity Jurisprudence, vol. 2, sec. 1546; Foster v. Shreve, 6 Bush, 530.)

T. C. BELL ON SAME SIDE.

1. The judgment appealed from is final, and subject to revision in this court.   (McCall v. Hitchcock, 7 Bush, 616; Same v. Same, 9 Bush 69.)

2. The petition is not good.   The general allegation as to fraud is not sufficient.   (Phillips' Adm'r v. Phillips, 80 Ky., 147.)

3. Even admitting that Portwood's children are devisees, or that the dismissal of the appeal was fraudulent as to Mrs. Miller and A. Portwood, the orders should not have been set aside in toto.    The judgment should have merely allowed the petitioners to set up the will.   (Gen. Stats., chap. 113, sec. 38; Singleton's Will, 8 Dana, 315; 8 B. M., 340.)

4. The widow and Portwood being parties to both appeals, they could only set aside the orders of dismissal for such reason as would enable them to impeach any other judgment at law.   (Gen. Stats., chap, 113, sec. 35.)

5. Portwood and the widow of the testator having both consented to the dismissal of the appeals, neither of them is entitled to maintain this action.

6. The children of Portwood take no interest under the will of the testator, and, therefore, can not maintain this action.

W. LINDSAY FOR APPELLEES.

1. The agreement to destroy the will was an agreement to commit a felony (Gen. Stats., chap. 29, art. 3, sec. 1; 1 Rev. Stats., 390, 391), and every step taken to carry out or perfect the objects and purposes of that agreement is in and of itself fraudulent and illegal, and it is the duty of the court to treat them, each and all, as void.

2. The Portwood children have interest enough to act as relators, and to call the attention of the court to the fact that it has been made the instrument through which an illegal and fraudulent contract has been carried out, and with that knowledge the court, of its own motion, will retrace its steps, set aside the agreed orders, and reinstate the appeals upon its docket, which is all it has done.

3. It was the duty of the executor not only to offer the will for probate, but to make an honest effort to have it probated.   (Pryor v. Mizner,

Brookie, &c., v. Portwood.

79 Ky., 234.)  His agreement to forbear to do so was against public policy and void, and he is not bound by any of the orders made pursuant to that agreement.

J. H. D. McKEE ON SAME SIDE.

7. The judgment appealed from is not final, and, therefore, not subject to revision by this court.  (Freeman on Judgments, pp. 15, 16, and authorities there cited; Rodman v. Forline, 2 Met., 326; Offutt v. Bradford, 4 Bush, 413; Allison v. Taylor, 3 Mon., 7.)

2. The former judgments of the court were vitiated by fraud, and were, therefore, properly set aside.

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

A. Miller, of Anderson county, Ky., died, leaving a last will, which was signed by him and duly attested by the subscribing witnesses.

After devising to his wife, Lucinda Miller, the sum of five hundred dollars, which, by antenuptial contract, she was to receive at his death, in lieu of any interest, as widow, in his estate, he directed that all of his real and personal property be sold by his executors after his death, and the proceeds, after the payment of his debts and funeral expenses, and the legacy of five hundred dollars to said Lucinda Miller, to be divided in eight equal parts, he having that number of children.

He then devised to each of his four sons one-eighth part absolutely, and one-eighth part to his daughter, Louisa Portwood, wife of Ambrose D. Portwood, to be held by her to her own exclusive use and benefit, free from the control or debts of her said husband.  The three remaining eighths he directed his executors to hold, one-eighth each for the benefit of his three daughters, Mary Ann Wills, Susan E. Brookie and Emily Searcy, but none of said sum, or its profits or increase,

was to be paid to any one of his said daughters as long as her husband should live; and if he should die first, then said estate should be hers absolutely; or if she should die first, leaving children, then her said estate should go to them absolutely; if leaving none, then said estate should go back to his estate to be divided equally among his remaining children.

The testator then appointed C. Miller, his son, and Ambrose D. Portwood, his son-in-law, executors of his will.

The said executors offered, or rather pretended to offer, said will for probate to the Anderson County Court, which will was rejected by the order of that court.

Mrs. Lucinda Miller then appealed to the Anderson Circuit Court from the order of the county court rejecting said will. Afterwards she dismissed her appeal absolutely.

The said executors then appealed to the Anderson Circuit Court from the order of the county court rejecting said will. Afterwards, said appeal, by an agreed judgment, was dismissed absolutely, and the order of the county court rejecting said will sustained, and the will declared to be null and void.

Afterwards, Ambrose D. Portwood, one of the executors of the will, and his children, instituted an equitable action in the Anderson Circuit Court against said Brookie, Wills, and all of the devisees, both direct and contingent, under the will, not joined as plaintiffs in the action, for the purpose of setting aside the agreed judgment of the Anderson Circuit Court sustaining the order of the county court rejecting said

will, and declaring it null and void ; and also the judgment dismissing the appeal of Mrs. Miller absolutely, and for the further purpose of reinstating those causes upon the docket, and having a new trial granted, upon the ground that the rejection of said will by the county court, the dismissal of Mrs. Miller's appeal in the circuit court, and the agreed judgment annulling said will, were each and all obtained "by fraud and management."

Issue was joined and proof taken, and upon the hearing of the cause the lower court, by its judgment, sustained the prayer of the petition. From that judgment appellants have appealed to this court.

The pleadings and evidence in the cause establish the following series of facts incontrovertibly, which bristle with fraud :

1st. After the death of the testator, and the contents of the will had been made known, the direct devisees named in the will, the executors being of the number, and Brookie, Wills and Searcy, without regard to the rights of the contingent devisees, who were minors, by a written agreement signed by all of them, agreed to "destroy" said will and distribute said estate among the children of the testator according to the general laws of descent.

2d. Afterwards, said executors presented said will for probate to the Anderson County Court, but offered no proof as to the proper execution of the will, nor of the competency of the testator to make it. On the contrary thereof, the county judge was informed that the devisees had all, by a writing, agreed to set aside the will and let the estate pass by the laws of descent,

whereby he was induced to order the rejection of the will. All the devisees, Brookie, Wills, etc., being spokesmen, concurred in this proceeding and aided it.

3d. The legacy of Mrs. Miller, the widow, being affected by the rejection of the will, she appealed from the order of the county court rejecting the will to the circuit court. Thereupon Brookie and Wills paid her the sum of five hundred dollars, which she was not entitled to under the will, and her attorney's fees, to dismiss the appeal absolutely. Said executors and the other devisees aided and abetted in this proceeding.

4th. Nearly a year afterwards, said executors took an appeal to the Anderson Circuit Court from the order of the county court rejecting said will, Portwood being paid his costs and attorney's fee by Wills. There was an agreed judgment entered in the circuit court affirming the order of the county court rejecting the will, and declaring it null and good for nothing. This was done without a trial, or an investigation of any sort, but agreed to harmoniously all around.

5th. In this last appeal some of the infant contingent devisees were made parties, but always by their next nearest and dearest friend Brookie, to guard and protect their interest against the tricks and wiles of mercenary schemers and plotters.

The foregoing facts show that Brookie, Wills, Searcy and Portwood, the first named three being very much angered because they were so decidedly discriminated against in the will, started out with the determination of breaking it at all hazard, whether fair or foul. But why the sons of A. Miller should join in the enterprise is difficult to comprehend, unless it was for the

purpose, as one of them intimates, of keeping peace in the family, and stopping some reports circulated about their father by Brookie, damaging to his memory as an honest man.

The General Statutes, chapter 29, article 13, section 1, provide, that "if any person fraudulently destroy or conceal a will or codicil, with intent to prevent the probate thereof, he shall be confined in the penitentiary," etc.

Here, while the parties, it seems, did not agree to "destroy" the will in the sense of separating its constituent parts, or by annihilating it, yet they did fraudulently agree to destroy or suppress it by the aid of the courts, and, pursuant to that agreement, they obtained orders and judgments of the courts by disengenuous and fraudulent practices, to meet and guard every conceivable phase of their enterprise : 1st, the order of the county court rejecting the will ; 2d, the dismissal of Mrs. Miller's appeal ; 3d, as the last and crowning act, the agreed judgment of the circuit court declaring the will null and of no effect.

To accomplish the destruction of the will—what would have been a penitentiary offense in the one case —they veered around by going through the farce of court proceedings.

But, without reference to the analogy furnished by the statute, it is well settled that to destroy or suppress a written instrument for the purpose of hindering or defeating the rights of others, however innocent the motive, is at least a constructive fraud upon the rights of such persons. Also, if such destruction or suppression is done with a wrong motive, then the

fraud is actual.   Also, when such instrument has been intentionally destroyed or suppressed, every thing will be presumed against the party by whom the destruction or suppression has been done.

For the foregoing reasons, is seems to us clear that the order of the county court rejecting said will, the dismissal of Mrs. Miller's appeal in the circuit court, the agreed judgment in the circuit court annulling and declaring said will of no effect, were all obtained by fraud, and the lower court, therefore, rendered a correct judgment.

It is contended, however, that the plaintiffs in the lower court, not having any beneficial interest under the will, had no right to bring the suit.   Also Portwood, having been a party to said agreement, and all of the orders and judgments of the courts, is estopped, not being himself defrauded, to assail them. Were he suing in his individual right, the question of estoppel would be worthy of consideration.

Here, however, he is one of the executors of said will, and was at the time he entered into said agreement, and helped to obtain said fraudulent orders and judgments.   By doing which he violated a high and delicate trust reposed in him by A. Miller.   It was his duty to use all honest and reasonable means within his power to have that will probated, and to execute its provisions after probation honestly and to the best of his ability ; and not directly or indirectly to throw any obstacle in the way of probating it or the faithful administration of it according to its letter and spirit. His antagonizing, by his conduct, any of these duties, was a fraud upon the will and against public policy.

Instead, therefore, of a court of equity applying the gag of estoppel to him, it will encourage him to open his mouth and cast out the wrong he has done the estate that he was under a solemn and sacred obligation to protect, and resume his fiducial relations to it as an honest man should.

The judgment of the lower court is affirmed.