## MILLS *v.* SMITH *et al.*

*(Supreme Court, General Term, First Department. June 29, 1892.)*

1. WILLS—DUTY OF ADULT LEGATEES TO MINORS—GUARDIAN.
   Adult legatees owe no duty to an infant legatee to have a guardian for him appointed, or to have bonds given by the executors.

2. DUTY OF EXECUTORS—INVENTORY.
   The duty of having an appraisal and inventory made of a testator's estate rests not on the adult legatees, but on the executors.

3. SAME—SETTING APART TRUST FUND.
   Where a testator bequeaths his executors a certain sum for trust purposes, "to be taken out of * * * personal estate," the executors are not bound to set it apart in money.

4. RIGHTS OF LEGATEES—DISTRIBUTION OF ESTATE.
   One entitled to a legacy to be held in trust by the executors, cannot complain that the estate was distributed to residuary legatees in disregard of his rights, when it appears that his legacy was set apart, as required by the will, previous to such distribution.

Appeal from special term, New York county.

Action by Wilfred F. Mills against Edmund T. Smith, executor, and others, for the amount of a legacy alleged to have been unlawfully appropriated by and with the consent of defendants. From a judgment dismissing complaint, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and O'BRIEN and ANDREWS, JJ.

*Hart & Price,* (*George H. Hart,* of counsel,) for appellant. *Du Bois Smith,* (*Fred W. Hinrichs,* of counsel,) for respondents.

ANDREWS, J.   William W. Mills died in January, 1865, leaving a widow, Eliza A. Mills, and eight children, namely, Washington, William W., Horatio, Wilfred, Josephine, Oscar J., and Theodore F. Mills, and Amanda M. Smith, wife of Edmund T. Smith.   The deceased left a will, in which his widow, Eliza A., and two of his children, Washington and William W., were named as executrix and executors.   Such will was admitted to probate by the surrogate of Suffolk county, N. Y., on January 26, 1865, and letters testamentary were thereupon issued to said executrix and executors, all of whom ` qualified.   Said widow died in July, 1865, and thereafter the two executors continued to act as such.   Said son Theodore F. married in 1858, and had two children, one of whom died August 28, 1863, and the other is the plaintiff, who was born November 10, 1865.   Said Theodore died January 29, 1886, leaving the plaintiff as his only surviving child.   Said daughter Josephine Mills was made a party to this action, but died after the action was brought, in July, 1888.   Said son Washington died before this action was brought, unmarried and insolvent.   Said son William W., as sole surviving executor of the testator, was served with a summons in this action, but does not defend the action, or appear in it.   It is claimed by plaintiff, and not denied, that he is insolvent.   Said son Oscar J. does not defend or appear.   The defendants who defend the action are Edmund T. Smith, Wilfred I. Mills, Amanda M. Smith.   Said Amanda M. defends individually; said Wilfred I. individually and as an executor of Josephine Mills, deceased; and said Edmund T. Smith as sole surviving executor of said widow, and as an executor of said Josephine Mills, deceased.

The will of the testator contained the following provision: "I give and bequeath to said Eliza A. Mills, Washington Mills, and William Wickham Mills, Jr., executrix and executors as aforesaid, the sum of twenty thousand dollars, ($20,000,) to be taken by them out of my personal estate, in trust, however, to loan the same from time to time on bond and mortgage on real estate, and to apply the net income to arise therefrom, at their discretion, to and for the use of my son Theodore Mills during his natural life, and upon his decease to divide such last-mentioned principal sum, and so much of the income thereof as shall remain unexpended, equally among his children, if he shall leave any; and if he shall not leave any child living at the time of his decease, then in further trust to divide the same equally among my remaining children, except Oscar J.   If any of them, my said children, shall then be dead, his or her child or children, if any, to take the share of the parent deceased."   The sum of $15,000 was also given to the executrix and executors, to be held upon a like trust for the benefit of his son Oscar J. Mills and his children, if he should leave any.   The testator gave his wife certain chattels, the use and occupation of his homestead during her life, and the income of $50,000 during her life.   All the rest of his estate, and, upon the death of his widow, said principal sum of $50,000, were given, in equal parts, to all the children except said Theodore and Oscar J.   The plaintiff became 21 years of age on November 10, 1886, and thereupon demanded said legacy of $20,000 from William W. Mills, the sole surviving executor of the testator, who, it is alleged by the plaintiff, and not denied by the defendants, was insolvent, and unable to pay the same.   Thereafter, on January 13, 1887, this action was commenced by the service of a summons upon the present defendants and Josephine Mills, who, having subsequently died, her personal representatives were substituted in her place.

The amended complaint charges that the defendants and the said Josephine did unlawfully induce and cause the surrogate of Suffolk county to admit said will to probate without said surrogate appointing a special guardian of the plaintiff, and without issuing or serving citations on the plaintiff or his special guardian to appear and attend the probate of said will, and did induce and cause said surrogate to issue letters testamentary to said Washington,

William W., and Eliza A. Mills without their giving a good and sufficient bond, although they were incompetent to serve as executors and trustees by reason of improvidence and insolvency. Also that by reason of the plaintiff's not having a guardian said executors unlawfully procured possession of said sum of $20,000. Also that the defendants and said Josephine unlawfully agreed and contrived to and with each other to a pretended appraisal of the property of the testator, and made and filed a pretended appraisement by persons selected and appointed by said parties, who were not appointed by said surrogate. That the plaintiff did not consent to said pretended appraisement, and had no notice of the same, and that the persons pretending to act as appraisers did not make a true and perfect inventory of the goods, chattels, and credits of the testator. Also that defendants and said Josephine wrongfully and unlawfully contrived together to prevent the said legacy of $20,000 from being discharged or caused to be discharged by said surrogate, and from being properly invested. Also that the defendants the said Washington and Josephine, together contriving, unlawfully caused and induced said surrogate to settle the accounts of the said executors, and to make a final decree upon the consent in writing of the said parties, without notice to or citation of the plaintiff. Also that the executors and trustees failed to appropriate the said sum of $20,000, and to loan the same, from time to time, on bond and mortgage. Also that during the month of April, 1872, the said executors and defendants and said Josephine, with intent to defraud the plaintiff, contriving together, distributed all the estate of the testator among themselves, and appropriated to their own use and benefit, in disregard of the rights of plaintiff, the said sum of $20,000. Wherefore the plaintiff demands judgment that said pretended appraisement and inventory be declared irregular, fraudulent, and void, and set aside as against the plaintiff; that the decree of the surrogate settling the accounts of the executors, and all proceedings on and under the same, be declared irregular, fraudulent, and void, and set aside as against the plaintiff; that the transfer and distribution of the estate of testator be adjudged fraudulent and void as against the plaintiff; that the plaintiff be adjudged to be the beneficiary under the trust created as aforesaid, and to have the sole right to receive said fund absolutely; that the defendants be declared to have fraudulently appropriated said $20,000 to their own use, and that they be adjudged to hold the same in trust for the plaintiff; that the defendants, and each of them, be adjudged to account for all of said property or money received by them, or either of them. There is also a prayer for an injunction, and for the appointment of a receiver of said fund. When the case came on for trial at special term, counsel for plaintiff, in opening, said: "There is an allegation of fraud in the complaint which we desire to withdraw. We propose to proceed upon the ground of constructive fraud only." Counsel for defendant then said: "We do not consent to it, although we have no objection to having your request put down upon the record." Thereupon the trial proceeded. The plaintiff put in evidence proceedings had in the surrogate's court in Suffolk county in the years 1866 and 1867 and in 1871 and 1872; called and briefly examined William W. Mills, said sole surviving executor; made offers of certain proof, which were objected to by defendants' counsel, and excluded; and then rested his case. On motion of defendants' counsel, the court thereupon dismissed the complaint, and from the judgment entered in favor of the defendants this appeal is taken.

We have carefully examined the bulky record presented upon this appeal, and we are unable to find any evidence whatever which tends to sustain the allegations of fraud contained in the complaint. The learned counsel for the plaintiff himself appears to have concluded that such allegations of fraud could not be sustained, because, as above stated, he declared in open court that he desired to withdraw such allegations, and proceed upon the ground of constructive fraud only. In view of the allegations of the complaint and

the evidence given upon the trial, we are in some doubt as to what counsel for the plaintiff meant by such statement. Fraud is either actual or constructive, and it is said that constructive or legal fraud may exist (1) where some settled rule of public policy is violated, or (2) where the parties occupy some special confidential or fiduciary relation. 8 Amer. & Eng. Enc. Law, p. 646. Not only was no evidence given upon the trial which tended to prove that the defendants had been guilty of actual fraud, but no evidence was given which tended to prove either that any rule of public policy had been violated by the defendants, or that they occupied any special confidential or fiduciary relation towards the plaintiff. We have also carefully examined the elaborate brief of plaintiff's counsel, but we fail to discover any grounds upon which the plaintiff was entitled to the relief prayed for in his complaint, or to any relief whatever in this action. The learned and industrious counsel has presented in his brief many propositions as to the law relating to the duties of executors and trustees, the rights of legatees, the practice in surrogates' courts, and other cognate subjects, and has cited numerous authorities which abundantly support many of such propositions. The difficulty is, however, that, in our view, most of such propositions and authorities are not applicable to the case at bar. Notwithstanding the statement above mentioned of plaintiff's counsel, at the commencement of the trial, that he desired to withdraw the allegation of fraud, in his requests to find submitted to the special term, and in his brief, such counsel renews the charges of actual fraud contained in the complaint; but, as above stated, not a *scintilla* of evidence was given upon the trial which in any degree tended to support such charges of actual fraud. On the contrary, such evidence affirmatively showed that the parties who defend this action acted throughout in good faith, and without intent to defraud the plaintiff. Assuming, however, notwithstanding the hard names applied to the defendants, that what plaintiff's counsel really intends to claim is that defendants, whether actually intending or not to defraud the plaintiff, did, by certain acts and omissions on their part, prevent the plaintiff from receiving such legacy of $20,000, and therefore ought to pay the same to him out of the moneys which they received under the will of the testator, and assuming that the court could disregard the allegations of actual fraud which are contained in the complaint, and grant the relief therein prayed for, if the evidence justified the granting of such relief, the difficulty is that the evidence does not, in our opinion, establish any cause of action against the defendants who have appeared and defend the action.

The plaintiff's counsel upon the trial put in evidence certain proceedings had in the surrogate's court in Suffolk county in the years 1866 and 1867. It appears by the record of those proceedings that, the executors having failed to file any account within 18 months after their appointment, four of the children of the testator—Horatio, Wilfred, Josephine, and Amanda M.—instituted proceedings to compel an accounting. Thereupon the executors presented accounts, to which objections were filed. Subsequently, while such proceedings were pending, a further petition was presented, setting forth the decease of the testator's widow, and praying for the distribution of the $50,-000 held in trust for her during her life. Finally, by consent of all the parties, an order was entered by the surrogate on May 30, 1867, which recited that the executors having made distribution of the further sum of $42,000 among the six residuary legatees, by consent of all the parties, the proceedings were discontinued, and the executors had leave to withdraw the accounts rendered by them. It appears by the accounts presented by the executors during these proceedings that prior thereto a large portion of the residuary estate had been distributed among the six residuary legatees. Such accounts also stated that the executors had set apart as trust funds $35,000. Plaintiff's counsel also put in evidence a copy of the record of proceedings had in said surrogate's court in the years 1871 and 1872. The petition upon which

these proceedings were instituted is not in the case, but it appears by an order which was finally entered that such proceedings were instituted by the four children of the testator, who instituted the above-mentioned proceedings in 1866. In the course of these proceedings the surviving executors, Washington and William M. Mills, presented a report to the surrogate, to which were attached elaborate schedules. Such report contains the following: "On the 13th March, 1865, we set apart $85,000 of said personal estate as a trust fund for the benefit of Mrs. Eliza A. Mills, the widow, and of Theodore and Oscar J. Mills, two of the sons, of said deceased, as provided by said will. * * * Schedule E contains a statement of the securities set apart for the trust fund for the benefit of Theodore and for Oscar J. Mills, two of the legatees named in said will. Eliza A. Mills having died, the $50,000 of securities set apart the 13th March, 1865, for her benefit have been divided in part, and form part of the divisions herein above set forth. By request of the residuary legatees, the executors paid to the said widow, Eliza A. Mills, and to Oscar and Theodore, interest on the principal sums bequeathed for their benefit from the time of the testator's death, and the items of such payments are set forth in Schedule D." Schedule D contains an item of $786, stated to have been paid to Theodore J. Mills on January 6, 1886, on account of his annual income. Said Schedule D also contains an item of $570, stated to have been paid by the executors on the same date to Oscar J. Mills on account of his annual income. Schedule E is headed as follows: "Trust Fund of Theodore F. and Oscar J. Mills. The principal of the following bonds and mortgages draw the accruing interest from January 6, 1866, and are appraised at par, and set apart as a trust fund by the surviving executors on this day, January 6, 1866." Then follows a list of four bonds and mortgages aggregating $20,000, stated to have been set apart for Theodore F. Mills; and also a list of four bonds and mortgages aggregating $15,000, which are stated to have been set apart for Oscar J. Mills. The report and schedules were verified by the two executors on April 22, 1871. Subsequently objections were filed to some of the accounts, and thereafter quite an amount of testimony was taken before the surrogate at various times between June 22, 1871, and July 12, 1871. On April 8, 1872, a decree was made by the surrogate settling the accounts of the executors. Among the items with which they are credited in the decree is the following: "The amount of trust funds set apart for Theodore F. Mills and Oscar J. Mills under provisions of will, as shown by Schedule E, $35,000." It does not appear by the papers before us whether or not the plaintiff or his father was cited to appear upon these proceedings. Assuming, however, as is claimed by plaintiff's counsel, that the plaintiff was not cited, and did not appear, and that no guardian was appointed for him, we fail to see that the defendants who defend this action did or omitted to do anything which renders them liable to make good to the plaintiff said legacy of $20,000.

As above stated, there is not a *scintilla* of evidence that the residuary legatees, other than the two executors, Washington and William W., were guilty of any actual fraud, or had any intent to defraud the plaintiff. Both the proceedings taken in 1866 and in 1871 were instituted at their instance; and in both proceedings, so far from such four residuary legatees being in collusion with the executors to defraud the plaintiff, such residuary legatees occupied an attitude hostile to the executors, and were vigorously engaged in protecting their own rights. Such four residuary legatees certainly had every reason to suppose that the $20,000 trust fund had been set apart by the executors, and was held by them. The executors so stated in the accounts filed by them in 1866, and in the report made to the surrogate in 1871, and the schedules attached to the latter report gave in detail all the particulars in relation to the bonds and mortgage stated to have been set apart for and which constituted such trust fund of $20,000. Neither the plaintiff nor his father

had any interest in the residuary estate. By the terms of the will, if such trust fund was once set up, Washington and William W. Mills were to hold the same as trustees, and neither the plaintiff nor his father had any right to be heard as to what disposition should be made of the residuary estate. No reason is suggested why the said four residuary legatees should have desired that the plaintiff should not have notice of the accounting, or why they should desire that no special guardian should be appointed for him; and there is no evidence whatever tending to show that said four residuary legatees intentionally did or omitted to do anything with the intent to defraud the plaintiff.

The first charge of the complaint is that the defendants and Josephine Mills, deceased, unlawfully induced the surrogate to admit the testator's will to probate without the said surrogate appointing a special guardian to take care of the interests of the plaintiff, and that said defendants induced the surrogate to issue letters testamentary to the executrix and executors without their giving a bond for the faithful execution of their trust. As above stated, the will was admitted to probate on January 26, 1865, and the plaintiff was not born until November 10, 1865; and it would therefore be a sufficient answer to this particular charge that the plaintiff was not in existence at the time the will was admitted to probate; and, even if he had been, the said defendants would have been under no legal obligation to have a special guardian appointed for the plaintiff, or to take steps to compel the executrix and executors to give bonds before letters testamentary were issued to them.

The second charge of the complaint is that by reason of the plaintiff's not having a guardian to take care of his interest, and to make objections against the granting of such letters testamentary, the executrix and executors unlawfully procured possession of said sum of $20,000. As the relator was not in existence when such letters were granted, and as the will of the testator expressly gave to the executrix and executors said sum of $20,000 to hold in trust, we are unable to see what foundation there is for the charge that they unlawfully procured possession of said sum of $20,000.

The third charge is that the defendants and said Josephine Mills unlawfully agreed and consented to and with each other to a pretended appraisal of the property of the testator, and made and filed, in pursuance thereof, a pretended appraisement by persons selected and appointed by said parties; that plaintiff did not consent to said appraisement or appointment, and had no notice of such appraisement. There is no evidence which tends to show that there was anything wrong in regard to such appraisal and inventory. On the contrary, it appears that the appraisal and inventory were made, in the manner they were, at the request and in the presence of all the parties in interest. The estate amounted to several hundred thousand dollars, and there were but $2,000 of debts. Fifty thousand dollars was to be held in trust for the widow during her lifetime, and $35,000 in trust for Theodore and Oscar. All the residue of the estate belonged absolutely to the other six children, and it is in the highest degree improbable that they were parties to an appraisal which was not a fair one; and, although the said four residuary legatees had contests with the executors about other matters, it does not appear that there was any complaint about the appraisal or inventory. Moreover, the duty of having the appraisal made and inventory filed did not devolve by law on said four residuary legatees, but upon the executrix and executors; and the said residuary legatees were under no legal obligation to the plaintiff to see that the appraisement was made and the inventory filed in the exact manner required by the statute.

The fourth and fifth charges are that the defendants and Washington and Josephine Mills, deceased, wrongfully and unlawfully contrived together to prevent the legacy bequeathed to the plaintiff from being discharged or caused to be discharged, and from being properly invested; and, contriving unlawfully, did cause and induce the surrogate to finally settle the accounts of the

executors and enter a decree, without notice to or citation of plaintiff. The petition upon which the accounting was had in 1871 and 1872 is not among the papers before us, nor is there anything to show whether or not the plaintiff was cited. It appears by the recitals in the decree which was entered that the accounting was had upon the petition of Horatio W., Wilfred I., and Josephine Mills, and Amanda M. Smith. But, assuming that the plaintiff was not cited, we do not see how that fact makes the said petitioners, or their estates, liable for the loss of his legacy. It is claimed by plaintiff's counsel that the surrogate was misled by certain statements in the accounts of the executors; that such statements were untrue, and that it was the duty of said petitioners to have corrected such misstatements, and to have brought to the attention of the surrogate the fact that plaintiff had a vested interest in said legacy. The statements complained of are the following: "Schedule G contains a statement of all persons entitled, as widow, legatee, or next of kin of the deceased, to share in his estate, with the places of residence and relationship to deceased. All are of full age." Schedule G is headed: "Statement of the Residuary Legatees, with their Residences." We do not see that there was anything in this statement or schedule which could possibly have misled the surrogate. Upon its face it purported to be only a statement of the persons interested in the residuary estate, and it was strictly true; for neither the plaintiff nor his father, who was then alive, nor Oscar J. Mills, had any interest whatever in such residuary estate. Moreover, there could have been no intent on the part of the executors to mislead the surrogate, because, as above stated, it was explicitly set forth in the report and in the schedules that bonds and mortgages to the amount of $20,000 had been set apart for the benefit of the plaintiff's father. Besides, there was no legal duty upon the part of the residuary legatees, other than the executors, to look after the interests of the plaintiff. Again, if specific bonds and mortgages to the amount and of the value of $20,000 were actually set apart by the executors as a trust fund for the benefit of the plaintiff's father, and either before such final accounting or afterwards were lost or misappropriated by the executors, the plaintiff has no claim by reason of such loss or misappropriation against the other residuary legatees. The testator in his will did not in terms appoint trustees of said $20,000 fund. He merely gave to his executrix and executors the sum of $20,000, to be taken by them out of his personal estate, and held in trust. It was not necessary to the full and valid discharge of the duties imposed upon the executrix and executors, in relation to this trust, that there should be any formal inventory or appraisal of the securities set apart for the trust, nor that there should be any action taken by the surrogate in relation thereto. It was competent for the executors and executrix to take any of the personal estate which yielded income, and set it apart, so that it would constitute the principal of said trust. The evidence is that they took bonds and mortgages, which were part of the personal estate left by the testator, and set them apart for the purposes of this trust. The fact that the trust fund had been set apart was stated in the accounts filed in 1866, and the full details as to when the fund was set apart, and of what it consisted, were given in the accounts filed in 1871 and 1872; and both these accounts were put in evidence by plaintiff's own counsel, without qualification or restriction. Moreover, plaintiff's counsel called as a witness William W. Mills, the sole surviving executor, and he testified as follows: "I am one of the executors under the last will and testament of William Wickham Mills, deceased. I received the mortgages and securities that were set aside for the trust fund by me for Theodore Mills, the father of the plaintiff in this action. I took them out of the safe with my brother, Washington Mills, one of the executors, and then he took charge of it. I never did anything with them thereafter, except as I have just stated. I never had any control over them." Upon this evidence we must hold that the trust fund of $20,000 was set apart, and that, whether the plaintiff was or was not cited upon the proceed-

ings which resulted in the final decree settling the executors' accounts, he has no claim against the residuary legatees who defend this action. It is, however, strenuously urged by plaintiff's counsel that the fund never was set apart, because the executors had no right to set apart anything but money. In this, we think, the learned counsel is mistaken. Nothing is said in the will about the executors setting apart money for the purposes of the trust. As above stated, they were simply given the sum of $20,000, to be taken by them out of the testator's personal estate. The fact that the will declared that they were to loan the same from time to time on bond and mortgage on real estate does not necessarily imply that it was their duty to sell the securities left by the testator, and reinvest the proceeds.

The last charge in the complaint is that in April, 1872, the executors and the defendants and Josephine Mills, with an intent to defraud the plaintiff, distributed all of the estate, and appropriated the same to their own use and benefit, in disregard of the rights of the plaintiff. As above stated, we think the evidence shows that the trust fund had been set apart, and there was no reason why the remainder of the estate should not be distributed. Briefly stated, the situation of affairs is this: In 1865 the executors set apart bonds and mortgages of the value of $20,000 to constitute the trust fund of $20,000; and, so far as appears from the papers before us, there is no evidence of what became of that fund, except that Washington Mills took charge of it. At various times between the probate of the will and the year 1872 the residuary estate was distributed. The plaintiff's father lived until 1886, and soon after his death the plaintiff called on William W. Mills, the sole surviving executor, and demanded the $20,000 legacy. Said Mills was insolvent, and could not pay it. Washington Mills, the other executor, who probably misappropriated the fund, died years ago, insolvent; the widow and executrix died in 1865. And now the plaintiff wishes to have the other residuary legatees make good his legacy. But whether we take the view that there is no evidence in the papers before us as to what became of the fund, or assume that Washington Mills misappropriated it, we are of the opinion that the complaint was properly dismissed, and that the judgment should be affirmed, with costs. All concur.