[Civ. No. 17313. Second Dist., Div. Three July 24, 1950.]

Estate of PEARL P. ARBUCKLE, Deceased. KATHERINE ELIZABETH STAINBACK et al., Respondents, v. STUART N. WEST, Appellant.

Margolis & McTernan and John W. Porter for Appellant.

Knight, Gitelson & Ashton, Alfred Gitelson and Robert R. Ashton for Respondents.

VALLÉE, J.—Appeal by Stuart N. West from a judgment dismissing a proceeding instituted by him to revoke the probate of a will. The contest was dismissed on the ground

that West was not an interested person entitled to contest the will under Probate Code, section 380.

West, not an heir at law of decedent, bases his right to contest the will on the ground he is the principal beneficiary under a prior will and codicil, executed by Pearl P. Arbuckle, decedent, which will, together with the codicil, was destroyed in 1943 or 1944, during decedent's lifetime, without her knowledge or consent.

Mrs. Arbuckle died testate February 26, 1947, in Los Angeles. On April 17, 1947, her purported last will and testament, dated November 19, 1939, was admitted to probate. By this will all of decedent's property was bequeathed to her niece Katherine Elizabeth Stainback, who was also named executrix. On August 5, 1947, West filed a petition seeking revocation of the probate of the 1939 will on the grounds of want of testamentary capacity and undue influence. Respondents filed a general denial and as a special defense alleged that West was not an "interested person" entitled to contest the will.

By stipulation of counsel the latter issue was presented to the court for determination on the opening statement of plaintiff's attorney prior to trial of the issues of fact relating to the validity of the asserted will. *(Cf. Estate of Plaut,* 27 Cal.2d 424, 426 [164 P.2d 765, 162 A.L.R. 837]; *Estate of Land,* 166 Cal. 538, 540 [137 P. 246]; *Estate of Wickersham,* 153 Cal. 603, 612 [96 P. 311].) Contestant's attorney made an opening statement in which he outlined the facts he expected to prove. Respondents then moved to dismiss the proceeding on the ground it affirmatively appeared contestant was not an interested person under Probate Code, section 380. No evidence was received. The motion was granted. West appeals from the judgment which followed.

The opening statement revealed that appellant was prepared to prove the following facts:

Appellant and decedent's daughter Edith were married in 1916. Edith died in 1917. Decedent met a Mr. Bell in 1920 or 1921 in connection with a real estate transaction. Thereafter a relationship of great confidence developed between them which continued for almost 20 years. Bell supervised and managed decedent's real estate interests, and in the latter part of 1934 was given a general power of attorney by decedent to handle her business affairs and property. In 1933 decedent decided to make a will and went to Bell for assistance. She explained the terms of the proposed will to him and he drafted

it for her. Decedent approved it and executed it in his office in the presence of two witnesses who signed it in her presence. Bell was named as executor of the will. It provided that after paying the debts of the estate he was to liquidate the real estate interests and divide the proceeds four-fifths to appellant and one-fifth to decedent's half-sister Virginia Stainback. Only an original of the will was made which decedent at the time of execution handed to Bell for safekeeping. About a year later decedent made an holographic codicil which modified the 1933 will only by naming two beneficiaries as legatees of $500 each. On its execution decedent delivered the codicil to Bell for safekeeping. Bell placed the will and the codicil in his safe deposit box.

Beginning in 1934 decedent gradually deteriorated mentally. In 1938 Bell arranged for a companion nurse for her. In May of that year the companion nurse sent for Katherine Stainback, urging her to come to California to look after decedent. Katherine came to California and later was joined by her mother and father. On November 19, 1939, decedent executed the will in contest. At that time she was between 73 and 83 years of age. Soon after the execution of this will the Stainbacks notified Bell his services as decedent's manager were no longer required. In November, 1942, decedent was placed in a private mental sanitarium by the Stainbacks where she remained until her death.

The 1933 will and the codicil thereto remained in Bell's safe deposit box until about 1940, when he transferred them to a file in his office. In 1943 or 1944, and after decedent had been placed in the mental sanitarium and at a time when she was of unsound mind, Bell, in accordance with his practice of periodically cleaning out his business files and assuming that his relationship with decedent had been finally terminated, took all the papers in the Arbuckle file and destroyed them by burning, including the 1933 will and the codicil thereto. He destroyed the 1933 will and the codicil thereto in the absence of decedent, without her direction and without her knowledge or consent. Facts giving color to appellant's claim on decedent's bounty and showing that in naming West as the principal beneficiary in the 1933 will decedent was discharging an obligation to him for which she had received consideration, were also stated.

We, of course, assume the facts stated in the opening statement to be true for the purpose of this decision.

■ Where it is shown that a will cannot be found after the death of the testator and when last seen or known to exist it was in his possession, two inferences arise: (1) that the will was destroyed by the testator, and (2) that the act of destruction was done *animo revocandi.* (*Estate of Johnston,* 188 Cal. 336, 339, 340 [206 P. 628] ; *Estate of Moramarco,* 86 Cal.App. 2d 326, 334 [194 P.2d 740] ; 26 Cal.Jur. 807, § 141.) These inferences do not arise in the present case. According to the opening statement, upon the execution of the will it was deposited with Bell as custodian and remained in his possession until its destruction. The same was done with the codicil. It affirmatively appears that the testatrix did not, after the execution of the will or codicil, have either in her possession or have access to either of them. (*Estate of Thompson,* 44 Cal.App.2d 774, 777 [112 P.2d 937].)

■ Only an interested person may contest a will either before or after probate. (Prob. Code, §§ 370, 380.) An interested person is one who has "such an interest as may be imparied or defeated by the probate of the will, or benefited by setting it aside." (*Estate of Plaut,* 27 Cal.2d 424, 425, 426 [164 P.2d 765, 162 A.L.R. 837] ; *Estate of Land,* 166 Cal. 538, 543-544 [137 P. 246] ; *Estate of Bily,* 96 Cal.App.2d 333, 334 [215 P.2d 78].) ■ A beneficiary under an earlier will which would be entitled to probate if the contested will is declared invalid is an interested party and may contest the later will without first obtaining probate of the earlier one. (*Estate of Plaut,* 27 Cal.2d 424, 428-429 [164 P.2d 765, 162 A.L.R. 837].) The term "interested person" includes one interested under a prior will which has been fraudulently destroyed. (*McDonald* v. *McDonald,* 142 Ind. 55 [41 N.E. 336, 339, 340] ; *Will of Chittenden,* 1 Tuck. (N.Y.) 135; 68 C.J. 928, § 671; *cf. Estate of Phillips,* 202 Cal. 490, 498 [261 P. 709].)

■ In a contest of a will after probate the main issue to be adjudicated is the validity of the will admitted to probate, not the absolute validity of an earlier will under which the contestant claims; and a prima facie showing of the contestant's interest is sufficient. (*Estate of Langley,* 140 Cal. 126, 130 [73 P. 824] ; *Estate of Plaut,* 27 Cal.2d 424, 428 [164 P.2d 765, 162 A.L.R. 837].) ■ While probate of an earlier will, under which a contestant claims, is not necessary before he may maintain a contest, he has, nevertheless, the burden of proof on the trial of the contest and must, if the allegations of the petition concerning the earlier will are denied, make out

at least a prima facie case as to the existence, terms and validity of the earlier will and his interest thereunder (*Estate of Munfrey,* 61 Cal.App.2d 565, 568 [143 P.2d 414, 144 P.2d 370]; *Kennedy* v. *Walcutt,* 118 Ohio St. 442 [161 N.E. 336, 337-338]; Anno; L.R.A. 1918A 471), for if the will under which he claims is not a valid, unrevoked will, it is immaterial to him whether any other will is admitted to probate. In the case of an alleged destroyed will, a prima facie showing must be made that the will can be established as a destroyed will under Probate Code, section 350.

Section 350 provides that no will can be proven as a destroyed will "unless . . . shown to have been destroyed fraudulently . . . in the lifetime of the testator, without his knowledge . . ." Section 350 is remedial in its nature and is to be liberally construed in furtherance of justice and for the prevention of fraud. (*Estate of Camp,* 134 Cal. 233, 235 [66 P. 227]; *Estate of Patterson,* 155 Cal. 626, 638 [102 P. 941, 132 Am.St.Rep. 116, 18 Ann.Cas. 625, 26 L.R.A.N.S. 654]; see also *In re Frandsen's Will,* 50 Utah 156 [167 P. 362, 364]; *Hall* v. *Allen,* 31 Wis. 691, 694; *In re Dorrity's Will,* 118 Misc. 725 [194 N.Y.S. 573, 576]; *Hook* v. *Pratt,* 8 Hun. (N.Y.) 102, 109; Thornton on Lost Wills, p. 46, § 23.)

It is undeniable, upon the facts stated to the court, that the testatrix did not destroy the will of 1933 or the codicil thereto, nor was either of them destroyed in her presence, or by her direction, or with her consent or knowledge. It follows that neither the 1933 will nor the codicil thereto has been legally revoked. Nowhere does the Probate Code declare that the destruction of a will by someone other than the testator, without his knowledge or consent, destroys the status of the will as an executed instrument. A will duly executed may continue to exist although the paper on which it is written has been destroyed. Unless revoked by the testator in one of the ways provided by the statute, it continues to exist as a will. It is expressly declared that a revocation can be made only in the manner and by the means prescribed by the Probate Code. (Prob. Code, § 74.) Destruction without intention to revoke is not a prescribed method of revocation; neither is destruction by someone other than the testator, not done in his presence, and done without his direction and without his knowledge or consent, a prescribed method of revocation. Under the statutes such destruction does not operate to revoke a will. The duly executed will has a potential existence, subject to defeat only

by revocation or by reason of impossibility of proof under the law. The destruction of a will during the lifetime of the testator should not preclude the probate of the will if the act of destruction was not accomplished under such conditions as to revoke it and if the proof meets the requirements of section 350. Section 350 relates wholly to the proof that must be furnished and the facts which must be established in order that a destroyed will may be admitted to probate. (*Estate of Patterson,* 155 Cal. 626, 637, 638 [102 P. 941, 132 Am.St.Rep. 116, 18 Ann.Cas. 625, 26 L.R.A.N.S. 654].)

Respondents contend that the allegedly destroyed will may not be proven because it was not "destroyed fraudulently." Appellant, on the other hand, contends that the destruction by the custodian of the will during the lifetime of the testatrix, without her knowledge or consent, amounts to a constructive fraud and thus a fraudulent destruction within the meaning of Probate Code section 350.

Fraud is either actual or constructive. It is conceded that actual fraud is not present here. Civil Code, section 1573, defines constructive fraud as consisting: " . . . 2. In any such act or omission as the law specifically declares to be fraudulent, without respect to actual fraud." Fraud assumes so many shapes that courts and authors have ever been cautious in attempting to define it. Each case must be considered on its own facts. (12 Cal.Jur. 705, § 2.) In its generic sense, constructive fraud comprises all acts, omissions and concealments involving a breach of legal or equitable duty, trust, or confidence, and resulting in damage to another. (*In re Hearn's Will,* 158 Misc. 370 [285 N.Y.S. 935, 941]; *In re Dorrity's Will,* 118 Misc. 725, 728 [194 N.Y.S. 573, 575]; 37 C.J.S. 204, 211, 213, §§ 1, 2 and 3.) Constructive fraud exists in cases in which conduct, although not actually fraudulent, ought to be so treated—that is, in which such conduct is a constructive or quasi fraud, having all the actual consequences and all the legal effects of actual fraud. (*Herd* v. *Tuohy,* 133 Cal. 55, 62 [65 P. 139]; *Higgins* v. *California Petroleum etc. Co.,* 147 Cal. 363, 368 [81 P. 1070]; *Higgins* v. *California Petroleum etc. Co.,* 122 Cal. 373, 376 [55 P. 155]; *Younglove* v. *Hacker,* 15 Cal.App.2d 211, 217 [59 P. 2d 451]; 12 Cal.Jur. 710, § 5; *cf. In re Dorrity's Will,* 118 Misc. 725 [194 N.Y.S. 573]; *Schultz* v. *Schultz,* 35 N.Y. 653 [91 Am.Dec. 88]; *Rose* v. *Hunnicutt,* 166 Ark. 134 [265 S.W. 651].)

Constructive fraud usually arises from a breach of duty where a relation of trust and confidence exists. (*Darrow*

v. *Robert A. Klein & Co., Inc.*, 111 Cal.App. 310, 315, 316 [295 P. 566].) A confidential relation may be said to exist whenever trust and confidence is reposed by one person in the integrity and fidelity of another. (*Estate of Cover*, 188 Cal. 133, 143 [204 P. 583]; *Hemenway* v. *Abbott*, 8 Cal.App. 450, 463 [97 P. 190]; 37 C.J.S. 214, § 2, c, (2).)

 The opening statement asserted facts showing that Bell was decedent's trusted agent and business manager. Such a relationship is a confidential one, fiduciary in character. (*Darrow* v. *Robert Klein & Co., Inc.*, 111 Cal.App. 310, 316 [295 P. 566]; Rest., Agency, § 13, and California cases cited thereunder.) The acts of an agent are judged with almost the same strictness as those of a trustee. (*Williams* v. *Lockwood*, 175 Cal. 598, 601 [166 P. 587].) A trustee is not permitted to use or deal with trust property for his own profit, *or for any other purpose unconnected with the trust, in any manner.* (Civ. Code, § 2229.) "A violation of duty on the part of a trustee is treated as a fraud upon the beneficiary (Civ. Code, § 2234), and a violation of duty on the part of an agent should be treated in the same manner. (Civ. Code, § 2322; *Sterling* v. *Smith*, 97 Cal. 343 [32 P. 320].) Under said section 2322, an agent may not do any act which a trustee is forbidden to do." (*Darrow* v. *Robert A. Klein & Co., Inc.*, 111 Cal.App. 310, 316 [295 P. 566]; *Elam* v. *Arzaga*, 122 Cal.App. 742, 746 [10 P.2d 805].) In addition to his other duties as decedent's trusted agent, Bell accepted custody of the 1933 will and codicil. In so doing, he accepted the responsibilities that went with that custodianship, to wit, to safely preserve the will and codicil for decedent until her death or until called for by her, and upon her death to deliver them (since he was named as executor in the will) to the clerk of the court having jurisdiction of the estate for probate. (Prob. Code, § 320.) Bell was, therefore, charged "with the execution of this trust." (*Mastick* v. *Superior Court*, 94 Cal. 347, 350 [29 P. 869]; *Vigne* v. *Superior Court*, 37 Cal.App. 2d 346 [99 P.2d 589]; *Snyder* v. *Security First Nat. Bank*, 31 Cal.App.2d 660, 665 [88 P.2d 760]; cf. *Pond* v. *Faust*, 90 Wash. 117 [155 P. 776, 778, Ann.Cas. 1918A 736]; *Caulk* v. *Burt*, 112 Miss. 660 [73 So. 618, 619].)

Bell's action in destroying, without the knowledge or consent of the decedent, the very thing that had been entrusted to his care for safekeeping, had all the actual consequences and all the legal effects as though it had been destroyed under circum-

stances amounting to actual fraud. He not only violated the confidence and trust which decedent had reposed in him and failed in the duties which he had assumed by his acceptance of the will (see Civ. Code, §§ 2229, 2234, 2322), but his act served to defeat the wishes and intent of the decedent with regard to her will. Such violation, although done in good faith, is, in the eyes of the law, a constructive fraud upon the decedent and the beneficiaries named in the 1933 will and the codicil thereto. It was a fraudulent destruction of the will and codicil within the meaning of Probate Code section 350.

Our conclusion is in line with the decisions in other jurisdictions having statutes similar to Probate Code, section 350. Among other cases are the following: *Schultz* v. *Schultz*, 35 N.Y. 653 [91 Am.Dec. 88]; *In re Dorrity's Will*, 118 Misc. 725 [194 N.Y.S. 573]; *Estate of Breckwoldt*, 170 Misc. 883 [11 N.Y.S.2d 486, 488]; *In re Cosgrove's Will*, 31 Misc. 422 [65 N.Y.S. 570]; *In re Gethins' Will*, 97 Misc. 561 [163 N.Y.S. 398]; *St. John* v. *Putnam*, 128 Misc. 714, 717 [220 N.Y.S. 141, 145]; *Rose* v. *Hunnicutt*, 166 Ark. 134 [265 S.W. 651]; *cf. In re Bians' Estate*, 162 Md. 208 [159 A. 596]; *Brookie* v. *Portwood*, 84 Ky. 259 [1 S.W. 637] *Succession of O'Brien*, 168 La. 303 [121 So. 874, 875]; *In re Frandsen's Will*, 50 Utah 156 [167 P. 362]; *In re Miller's Will*, 49 Ore. 452 [90 P. 1002, 124 Am.St.Rep. 1051, 14 Ann.Cas. 277].

The statute on which section 350 is based was originally adopted in 1850. (Stats. 1850, chap. 129, § 38, p. 379.) As enacted, it was identical with the then New York statute.* The New York statute was enacted in 1827. 1 R.L. 364, title I, art. third, § 89. See New York Rev.Stats. 1846, vol. 2, p. 133.) Prior to 1850 the courts of that state had said that the fraudulent destruction of a will did not amount to a revocation in law, and that if its contents could be satisfactorily shown it would be admitted to probate. (*Idley* v. *Bowen* (1833), 11 Wend. (N.Y.) 227, 236.)

In *Schultz* v. *Schultz, supra*, 35 N.Y. 653 [91 Am.Dec. 88], the testator executed his will on October 23, 1863. He left it for safekeeping with one of the beneficiaries, who placed it in

---

*The original California statute and the New York statute read: "No will . . . shall be allowed to be proved as a lost or destroyed will unless the same shall be proved to have been in existence at the time of the death of the testator, or be shown to have been fraudulently destroyed in the lifetime of the testator, nor unless its provisions shall be clearly and distinctly proved by at least two creditable witnesses, a correct copy or draft being deemed equivalent to one witness."

his trunk. The testator died about two years later. When the testator died the custodian supposed the will was in the trunk where he had placed it, but it was not there, and could not be found. The testator did not have the will in his possession after he gave it to the custodian. The court held (91 Am.Dec. 90) : ''The fraud mentioned and referred to in this connection is a fraud upon the testator by the destruction of his will so that he should die intestate, when he intended and meant to have disposed of his estate by will, and never evinced any change of that intent. It is undeniable from the facts in the record that either this will was in existence at the time of the death of the testator, or that it had been destroyed in his lifetime without his knowledge, consent, or procurement, or accidentally lost. If so destroyed, it was done fraudulently as to him, and in judgment of law the legal results are the same precisely as if it had continued in existence up to the time of his death.''

In the Dorrity case (118 Misc. 725 [194 N.Y.S. 573] ) the testatrix executed a will on February 21, 1921. In October, 1921, she took it to an attorney and asked him to add a provision to it. The attorney directed his stenographer to add the provision. The stenographer recopied the last three sheets of the executed paper writing with an added clause therein as desired by the testatrix. Before the work was done, the testatrix told the attorney she would go out and do some shopping and return. The stenographer took the executed will apart, removed the last three pages, and in their place substituted the three new typewritten sheets. The three sheets of the executed document contained the signature of the testatrix, the attestation clause, and the signatures of the witnesses. The stenographer mislaid, lost, or destroyed the sheets of the executed will, unknown to the decedent. They were never found. The testatrix never returned to the attorney's office. She died shortly thereafter. In holding that the will was fraudulently destroyed, the court said (194 N.Y.S. 575) : ''The equitable doctrine of fraud deals with those manifold varieties of fraud where relief is required for the purpose of substantial justice. It includes all acts, or admissions, which involve a breach of duty, or trust or confidence reposed, and are injurious to another. Bouvier's Dict. 1306; 1 Story, Eq. Juris. (14th ed.) 256; *People* v. *Kelly*, 35 Barb. 444, 457; *Mills* v. *Smith*, 65 Hun. 619, 19 N.Y.S. 854-857. The

fraud mentioned in section 143 of the Surrogate's Court Act*
is a fraud upon the testatrix and the persons who would take
under the will by her dying intestate when she meant to die
testate. The will was destroyed fraudulently as to her and
those who take under the will. There was no actual fraud, nor
an intention to profit by the destruction of the will. The
destruction of the will, without the knowledge or consent of
the testatrix, in disregard of her intention and to the injury of
the objects of her bounty, constitutes constructive fraud, and
becomes a fraudulent destruction, within the meaning of
section 143 of the Surrogate's Court Act. [Citations.] The
statute should have a liberal construction. *Hook* v. *Pratt*,
8 Hun. 102. No positive dishonesty of purpose is required
to show constructive fraud.''

The same principle was followed in *Rose* v. *Hunnicutt*, 166
Ark. 134 [265 S.W. 651], where the will was lost or destroyed
by the custodian, and the court held, page 652 [265 S.W.],
''If lost or destroyed in the lifetime of the testatrix, without
her consent or knowledge, it amounted to a fraudulent
destruction of the will as to her,'' citing *Schultz* v. *Schultz*,
*supra*, 35 N.Y. 653, [91 Am.Dec. 88].

*Estate of Kidder*, 66 Cal. 487 [6 P. 326], and *Estate of
Johnson*, 134 Cal. 662 [66 P. 847], cited by respondents, are
distinguishable on their facts from the present case. In
neither case was the will destroyed out of the presence of the
testator and without his knowledge or consent by a custodian
with whom it had been deposited for safekeeping. In the
Johnson case the will was destroyed by a friend in the pres-
ence of the testator who made no effort to prevent its destruc-
tion. Since the testator was present at the time and aware of
its destruction, it was done with his consent and impliedly by
his direction. In *Estate of Kidder*, one of the findings was
that ''when said will was brought to her (the testatrix) she
partially withdrew it from the envelope, and then returned
it, there and then *allowed it to fall from her hand into the fire*,
when it was wholly consumed.'' (Italics added.) The only
witness present when this occurred, and upon whose negligence
it was alleged the will was fraudulently destroyed, testified as

---

*Under section 143 of the Surrogate's Court Act, a lost or destroyed
will may be admitted to probate in the Surrogate's Court if ''the will
was in existence at the time of the testator's death, or was fraudu-
lently destroyed in his lifetime, and its provisions are clearly and
distinctly proved by at least two creditable witnesses, a correct copy
or draft being equivalent to one witness.''

follows concerning the destruction of the will: "I handed the will to her; she lay it in her hands like that (showing) and kind of sank, and I just walked around the other side of her, and saw it was in the fire. While I was walking, it was in the fire. . . . She made a motion of her hand down on one side, like she was half asleep, and the paper went into the fire, and was consumed there." This evidence was held insufficient to show a fraudulent destruction of the will. Since the testatrix herself "allowed it. to fall from her hand into the fire," it could reasonably be inferred that the testatrix destroyed the will "with the intent and for the purpose of revoking the same." (Prob. Code, § 74.)

We conclude appellant made a sufficient showing in his opening statement that he is able to establish at least a prima facie case that he is an interested person entitled to contest the will of November 19, 1939, and that the motion to dismiss the proceeding should have been denied.

Judgment reversed. Respondents to bear appellant's costs on appeal.

Shinn, P. J., and Wood, J., concurred.

A petition for rehearing was denied August 17, 1950. Respondents' petition for a hearing by the Supreme Court, diminution of record, to vacate decision and consolidate this appeal with appeal taken in action No. 530381 of the Superior Court of Los Angeles County, and to stay all proceedings until the determination and decision upon the appeal in said action No. 530381, denied. Traynor, J., voted for a hearing.