[Civ. No. 5632. Third Appellate District.—July 6, 1936.]

ROY S. YOUNGLOVE et al., Respondents, v. NICHOLAS W. HACKER et al., Appellants.

212

Stuart H. Hacker for Appellants.

Merriam, Rinehart & Merriam for Respondents.

PLUMMER, J.—This action was begun by the plaintiffs to obtain rescission of a certain contract set forth in the complaint for damages for breach of contract and for declaratory relief, and such other relief as to the court might seem just and equitable.

The court by its judgment awarded damages to each of the plaintiffs in the sum of $1,000. The plaintiffs were also granted declaratory relief for any sum that they might be compelled to pay on account of a certain action numbered 309,510 pending in the Superior Court of the County of Los

Angeles, based upon a guaranty executed by the plaintiffs, whereby they became responsible to the Bank of America in the sum of $3,000 loaned to the corporation. The plaintiffs were likewise granted declaratory relief as against the corporation, defendant herein, on account of the guaranty just mentioned. No rescission of any of the contracts executed by the plaintiffs was decreed by the trial court. From this judgment the defendant Hacker appeals, both in his individual capacity and as trustee.

The character of the judgment appreciably narrows the questions that need to be considered in this opinion in this, to wit: Even though it be conceded that the testimony does not show that the plaintiffs are entitled to judgment on account of fraudulent representations relative to entering into the contract herein mentioned, the testimony does establish beyond controversy that the defendant Hacker, as trustee for the plaintiffs and others, failed absolutely to carry out the terms and conditions of his trusteeship, neglected to safeguard the interests of the plaintiffs, to their damage, by reason of this failure to take the necessary steps provided for in the agreements the plaintiffs suffered loss.

The record shows that on about the 21st day of September, 1928, Hacker, the plaintiffs, and others, executed a certain writing called a "syndicate" agreement, by the terms of which the plaintiffs and others advanced the sum of $1,000 each for the purpose of promoting a certain corporation thereafter to be formed which finally was given the name of "Commercial Aircraft Corporation". The purpose of the corporation was to engage in the manufacture and sale of a six-passenger cabin biplane, according to certain blueprints, plans and specifications originated by one Arthur Green. The capital stock of this syndicate was fixed at $10,000, proceedings to be taken, however, by Hacker when $6,000 had been subscribed. This instrument provided for the repayment of the sums of money so advanced by the plaintiffs and others, and also provided for the issuance to them of 5,000 shares of the capital stock of the aircraft corporation which was subsequently to be created. The capital stock of the aircraft corporation was fixed at 1,000,000 shares of no par value.

Preceding the execution of the syndicate agreement and underlying the same, a certain writing dated September 17,

1928, was executed between the defendant Nicholas W. Hacker named as trustee, and Arthur Green, designated as owner of the blueprints, plans, etc., for the manufacture of biplanes. This agreement is very lengthy, but contains, among other things, the following recitals: " ' (a) The working drawings, blueprints and specifications of a certain biplane bearing Government Certificate No. ——; (b) a certain order for twenty (20) biplanes', etc. Also that said Green is the 'originator and exclusive owner of said working drawings, blueprints', etc., 'and has the right to produce and sell the said six-passenger cabin biplane constructed in accordance with said working drawings, specifications and blueprints,' etc., and transfers to said trustee, 'The exclusive right to manufacture and sell the said six-passenger cabin biplane', etc. In consideration of which said *trustee* (Hacker) was to (1) form an aircraft corporation with a capital stock of a million shares and (2) form a syndicate to raise $10,000. (or less) for the promotional expenses necessary to form said corporation, and start the promotion of said enterprise. Also providing that said owner would transfer to said Hacker as trustee 150,000 shares out of 600,000 of said stock to be issued to said owner in consideration of the transfer to said corporation of said plans, specifications and blueprints, etc., and the exclusive right to manufacture the biplane covered thereby. Also providing for the deposit of said 600,000 shares with appellant Hacker's law partner under a voting trust agreement.'' The terms of this agreement were not fully disclosed at the time of the execution of the syndicate agreement. An inspection of the agreement entered into between Hacker and Green discloses that provision was made for the issuing of 150,000 shares to Hacker of the Commercial Aircraft Corporation for the purpose of enabling him to raise money to reimburse the plaintiffs and others on account of the $1,000 contributed by each of them in promotion of the enterprise. Subsequently, the corporation also assumed the obligation of paying to the plaintiffs the sum of $1,000 each advanced by them under the syndicate agreement, and provided for the issuing of what was called "investment certificates". Later on, in order to further the interests of the corporation, the plaintiffs were induced to execute an agreement releasing the corporation and accepting the defendant Green as responsible for the

repayment of the $1,000 advanced by them. It was also provided that such repayment should be secured by the issuance of investment warrants calling for 1500 shares of the capital stock of said corporation, to be issued to secure payment to each one of the plaintiffs, such warrants to be sold by the appellants not later than July, 1929, the proceeds of the sale to be delivered to the plaintiffs. The record shows that no such deposit or sale was in fact made, nor was any effort made by the appellant or the defendant Green to carry out any of the covenants made with them either from such investment warrants or from stock issued to, or controlled by the appellant, even though the issuance of stock for that purpose was authorized by the Commissioner of Corporations of the state of California. The record does show that over $100,000 in cash was raised by the sale of the capital stock of the corporation. Later on it appears that the appellants were induced to execute to Bank of Italy, etc., a written guaranty upon loans of the corporation. This bank had been used as a depositary for the funds of the corporation. Subsequent to the execution of this agreement all funds belonging to the corporation were withdrawn from the Bank of Italy by the defendants without discharging the obligation to the bank of the corporation.

Some months after the cause was tried and submitted, but before any decision had been rendered, the trial court permitted the plaintiff to file an amended complaint setting out more specifically the allegations of fraud.

Upon this appeal the first contention of appellant is based on the action of the trial court in permitting the filing of an amended complaint, it being claimed by the appellant that the amended complaint sets forth a new cause of action. Neither the original nor the amended complaint, nor any sufficient summary thereof is set forth in the appellant's brief, nor in any appendix or supplement thereto.

The second contention of the appellant is that the evidence is insufficient to support the findings of fraud on the part of the appellant. In this particular only fragmentary excerpts of the testimony are set forth in the appellant's briefs.

The third contention of the appellant is that the evidence does not warrant a judgment for declaratory relief. The judgment itself is not set forth in the plaintiffs' brief,

nor are there any authorities cited supporting this contention, and the argument of the appellant fails to show any reason supporting such contention. This last contention may be properly answered by reference to section 1060 of the Code of Civil Procedure, which sets forth that any person interested under the contract may have his rights adjudicated and declared. The section further provides that such relief may be granted, even though the complaint in the action asks for other relief.

As stated, the first contention of the appellant relative to the original complaint and the allowance by the court of the filing of an amended complaint to conform to the proofs, is not supported by the setting forth of any portion of either the original complaint or the amended .complaint. In this particular the appellant fails to comply with the last sentence of subdivision "C" of section 953. of the Code of Civil Procedure, which reads: "In filing briefs in said appeal the parties must, however, print in their briefs or in a supplement appended thereto, such portions of the record as they desire to call to the attention of the court." Notwithstanding the failure of the appellant to set forth sufficient in his brief to justify this court in examining the pleadings, we have done so, and are convinced not only that the original complaint states a cause of action, but that the amended complaint does not set forth a new cause of action. It does amplify and enlarge some of the allegations contained in the original complaint. It is nevertheless based upon the same cause of action. The original complaint sets forth that the appellant induced and caused the respondents to enter into a syndicate agreement; also charges that the appellant and Green connived and conspired to induce respondents and each of them, by misrepresentations, etc., to modify the syndicate agreement, release the corporation from its obligation to refund to each of them the sum of $1,000, and to accept instead investment certificates.

The basis of the original complaint lies in the allegations that the appellant failed and neglected to carry out his agreement while acting as trustee for the plaintiffs and others, in not taking any action to secure the repayment to the plaintiffs of the moneys advanced by them in the original promotion of the enterprise, although ample provision was made therefor.

We do not need to cite authorities to the effect that a trustee of an express trust wherein it is provided that the trustee shall take certain steps to secure the interest of those for whom he is trustee, must use reasonable diligence in the execution of the trust, and if he fails to take any action to protect the interest of those for whom he is trustee, and no reasonable excuse appearing therefor, he is liable in damages. In the instant case the appellant assumed the position of trustee for the purpose of protecting the interest of the plaintiff, and absolutely did nothing, and the record fails to disclose any excuse whatever for his inaction. This we think constitutes constructive fraud as set forth in section 1573 of the Civil Code. The language of the text found in 12 California Jurisprudence, page 710, appears applicable: ''Constructive fraud also exists in cases in which conduct, although not actual fraud, ought to be so treated, that is, in which such conduct is a constructive or *quasi* fraud having all the consequences and all the legal effects of fraud.'' Here, the appellant assumed to perform certain duties to protect the interests of the plaintiffs. The plaintiffs reposed confidence in him that such duties would be performed. Nothing whatever was done by the appellant in relation to carrying out the obligations assumed by him in protecting the interests of the plaintiff, but allowed the same to go by default, to the financial detriment of the plaintiffs.

That the trial court had discretion to allow the filing of the amended complaint is amply supported by authorities, only one of which we need cite, to wit: 21 California Jurisprudence, page 211, where the text reads: ''Under Section 470 of the Code of Civil Procedure a court has discretionary power to permit, and even to order an amendment to conform to the proofs at any stage of the trial.''

Upon conflicting evidence in the instant case the court found fraudulent concealment on the part of the appellant and Green relative to a necessary permit to manufacture biplanes according to the plans, blueprints, drawings, etc., originated and owned by the defendant Green. It appears that no such permit was ever issued, nor does it appear that there was any order for twenty biplanes as represented. It would appear from the testimony, however, that the plaintiffs subsequently learned that no approval had been issued,

and that the sum of $2,500 was expended in the effort to obtain the necessary governmental approval. No such approval, however, appears ever to have been obtained.

We do not need to review the short excerpts of testimony set forth in the appellant's brief to controvert the allegations and claims of the plaintiffs as to what led to the syndicate agreement, or as to what properties were owned by the defendant Green, or as to whether there did or did not exist any orders for the purchase of the biplanes, and the incidental proceedings leading thereto, for the simple reason that what we have said we think fixes the liability of the appellant, by reason of his absolute disregard of the duties and confidence reposed in him as trustee for the plaintiffs, and likewise, the action of the appellant and his associates in removing the funds of the corporation from the Bank of Italy without discharging the obligation of the corporation to the bank, thus compelling the banks to look to the plaintiffs for reimbursement as guarantors.

The judgment of the trial court is affirmed.

Thompson, J., and Pullen, P. J., concurred.