[Civ. No. 4839. Fourth Dist. Feb. 16, 1954.]

Estate of FRANKLIN P. SHERWOOD, Deceased. DOUG-LAS HULL McLELLAN et al., Appellants, v. HOWARD C. SHERWOOD et al., Respondents.

John Dean Barrick for Appellants.

Gray, Cary, Ames & Frye for Respondents.

GRIFFIN, J.—Contestants and appellants, father and son, strangers to the blood of decedent Franklin P. Sherwood who died on January 20, 1952, filed a petition to contest his last will and testament and codicils thereto, on the ground of incompetency of deceased to execute a will, and on the further ground of undue influence.

The will and codicils were admitted to probate on February 18, 1952. This contest was not filed until August 1st, 1952. The citation thereon was not served until November 19, 1952, on the respondent Bank of America National Trust and Savings Association, the coexecutor. It has never been served on many other named respondents. The only interest of

contestants in the matter, as set forth in an amended petition, is alleged upon information and belief to be that there existed a prior will or document, the contents of which are said to be unknown, except that the contestants claim they were beneficiaries under certain writings which they allege constituted decedent's will and which were delivered by decedent to one Antoine E. Windson, a trusted employee of deceased, on a date unknown to petitioners, but during his lifetime, in which there was devised to petitioner Douglas Hull McLellan a certain parcel of real estate adjoining decedent's residence in La Jolla, valued at $25,000, and that they also provided a "substantial" fund for the education of contestant Douglas B. McLellan, the son; that said writings, constituting the last will and testament of decedent, were destroyed or suppressed by Windson, acting in concert with decedent's brother, Howard C. Sherwood, and without the knowledge of Franklin P. Sherwood; and that such will was never revoked.

Defendants and respondents Bank of America National Trust and Savings Association, Antoine E. Windson, and Emma Feldman on February 24, 1953, answered and denied generally the allegations of the petition in reference to the claimed undue influence and unsound mind of deceased, and specifically denied that deceased ever made a will or other instruments constituting a will in which petitioners were ever devised any property or in which they were ever mentioned, and specifically denied the petitioners' allegation that contestants were interested parties by reason of being legatees or beneficiaries under any purported last will and testament of deceased.

The contestants never took steps to bring the action to trial and refused to stipulate to taking, by written interrogatories, the deposition of Howard C. Sherwood, the brother, residing in New York. They also refused to stipulate to the taking of the deposition of Windson, to determine the truth of contestants' allegations in reference to the existence of any such claimed documents or of their claimed destruction thereof.

Thereafter, the executor, after due notice, did take steps to obtain these depositions, which resulted in the testimony that no such will ever existed, and these witnesses knew of none. Finally, on April 14, 1953, the coexecutor served notice on contestants that it and Howard C. Sherwood, the other coexecutor, would move the court on a day certain,

to first hear and determine the question of the interest of contestants and their right to maintain the will contest before determining the other issues raised by the answer, and to dismiss the contest if the court concluded they had no such interest, and also for the reason that the alleged contest was groundless, fictitious and sham, and an abuse of the process of the court. It averred that the motion would be based on the depositions of contestants, taken by respondents, as well as those of Windson and Sherwood, and upon the affidavits submitted, as well as the papers on file in the probate proceedings.

Contestants appeared and, without objections to the method of proceeding, filed an affidavit of Douglas Hull McLellan, in opposition to the motion, in which he recited generally that decedent had been a friend of his for many years and had, prior to April, 1948, informed him that he proposed to leave affiant a "substantial amount of property," including the property indicated, and to leave a fund for the education of his son, and that this property would be available to him at the time of his death; that when decedent became ill in April, 1948, it was exceedingly difficult for affiant to visit Mr. Sherwood because of the interference of Windson, who assumed great authority over these matters; that after Sherwood's death, about February 6, 1952, Windson called affiant and was complaining about unfair treatment of him, and affiant asked him if he (affiant) was provided for in the will, and that Windson said: "I will not make any statement until I have seen Howard Sherwood, but if Mr. Howard Sherwood does not make things right, I will have something very interesting to say to you"; that later, in May, 1952, Windson told him that he had in his possession an instrument or instruments signed by Franklin P. Sherwood, in which provision had been made for affiant in reference to the real estate mentioned and the fund for the education of his son, and that he had medical records that "would sure tell a story"; that Windson said that Howard Sherwood was shown the instruments and demanded that they be turned over to the attorney for deceased, Mr. Gray; that Windson said he was so upset he took a match and burned them up in the presence of Howard Sherwood, and that Howard Sherwood said that he would remember him in his will to the extent of $10,000 for so doing; that the next day Windson said: "Please forget everything I told you yesterday. I cannot go through with it."

Respondents' affidavits, in support of the motion, recite generally that the time for filing claims against the estate expired on August 8, 1952, and that all debts and claims of decedent were paid; that the federal estate tax would be due April 20th, 1953, and if not paid on or before that date would become delinquent; that neither the amount of the federal estate tax nor the California inheritance tax could be determined until the validity of decedent's will had been established, and that further delay would result in penalties and interest and in damage and loss to the estate and to the persons entitled thereto.

The attorney for decedent, Mr. Gray, filed an affidavit in which he stated that he had been attorney for decedent for many years; that decedent on many occasions counselled with him in reference to his estate and its disposition, and that never did decedent mention contestants or indicate a desire to remember them in his will, and never mentioned making a will in their favor nor exhibit any instruments that would indicate any such intention. He also showed that he had been a member of the firm of attorneys who drew deceased's will which was admitted to probate, and all the codicils thereto.

The depositions of contestants show generally that the only knowledge the son had of the affair was what his father told him. The father reiterated the statements he claimed Windson made to him.

The deposition of Antoine Windson was taken on April 7, 1953. He was extensively cross-examined by counsel for contestants. He stated that he had been estate manager for deceased for over 20 years. He identified a typewritten note, dated January 17, 1951, and initialed by deceased, reading:

"Antoine, Mesa Grande Property, Union Oil
    property & Stocks.
"Emma. Cash and Stocks.
"Dr. and nurses, small bequest
"Cousins.
"Friends.
"Personal belongings.
"San Diego Mission Orphanage.
"Deed the Mesa Grande house to Antoine
    immediately.
"Lots south of my house?
            FPS."

He testified this note was prepared by him at decedent's request. A similar memorandum dated January 31, 1951, was also identified by him, in which Antoine and many other persons were named, but which memorandum did not include the names of contestants. He then identified a memorandum of March 16, 1951, which he said was a typewritten copy of a memorandum signed by F. P. Sherwood, reading as follows:

"Antoine E. Windson, Union Oil Property, Mesa
              Grande Property & Stocks

"Emma Feldmann.  Cash & Stocks.

"Dr. W. E. Diefenbach.

"Douglas McLellan.

"Catherine C. Hitchcock.  Nurse.

"B. G. Rawley             "

"Harriet Okey.           "

"Frank Jaques        Gardner.

"Dr. D. W. Vanasen.

"A large sum to be left to my brother Howard so as to enable him to dispense of any bequests to certain individuals, clubs or organizations which I consider advisable for him to look after.

"Deed the Mesa Grande property over to Antoine now so as to avoid reappraisal of any additional assessment.

"My house at La Jolla.

"Ocean front.

"The above matter has to be discussed further."

It was Antoine's testimony that the decedent, during the last year of his illness, continually called him in after he had made certain notes and asked him to prepare a typewritten copy of his notes, and that the decedent then studied them over and initialed them and asked him to file them for future reference; that at that time he believed the decedent was formulating his will but that decedent told him that he was awaiting the arrival of his brother Howard C. Sherwood who was a lawyer in New York, for further discussion in reference to its preparation; that on occasions he would again call for these notes, destroy some, and supplant others; that he never had anything to do with the preparation of Mr. Sherwood's final will, and that he never had in his possession nor did he ever see a will or codicil or a copy of a will or of a codicil in which Douglas Hull McLellan or his son was named in any capacity; that when the name of Mr. McLellan was mentioned to him by deceased at the time of making the memo-

randa above indicated there was no indication as to what property, if any, he was to receive, but that deceased told him that he wished to discuss "a certain matter with his brother when he came in regard to Mr. McLellan"; that he wrote to Howard Sherwood asking him to come west because his brother wished to see him, but that his brother did not do so; that he did not turn over this memorandum to Mr. Gordon Gray, the attorney, because he was not authorized to do so; that subsequently, on April 6th, 1951, the decedent's will was executed but that he had no knowledge of its terms or of the disposition of the property by the decedent.

When examined as to the claimed conversations the witness had with Mr. McLellan shortly after the death of the decedent, his answers to the questions propounded were quite evasive and equivocal. He stated, in most instances, instead of denying such conversations, that he did not remember such conversations due to his nervousness and general mental and physical condition. He recalled having a conversation but stated: "I don't remember discussing a will." He admitted having the memoranda above referred to in his possession at the time of his conversation with Mr. McLellan but feeling, at that time, they were of no further value, he destroyed them by putting them in the fireplace, and that Howard Sherwood had read them and saw him do it. He did state that he and Howard Sherwood did show these notes or memoranda to Gordon Gray about May 12th, but they were subsequently burned for the reasons expressed. It now appears that the witness Antoine died prior to the perfection of this appeal.

The order and judgment of dismissal following this hearing recited that the motion was made in open court for a dismissal of the will contest, and that "evidence having been produced, the court having fully considered all of the records and files herein, including but not limited to the depositions taken in the above entitled matter and on file herein, and the matter having been fully tried, argued and submitted, and the court, being fully advised in the premises" granted said motion. The court particularly found that neither of contestants had any interest in the estate of Franklin P. Sherwood, deceased, nor any right to maintain the contest, and found that the contest was groundless, vexatious, fictitious and sham, and an abuse of the processes of the court, and dismissed it with prejudice.

It is contestants' argument on this appeal from that order (1) that the hearing of the motion to dismiss did not constitute

a trial of the action on an issue of fact, citing Code of Civil Procedure, section 594; (2) that the judgment of dismissal is not within the provisions of sections 581 to 583 of the Code of Civil Procedure; and (3) that the judgment of dismissal could not be upheld on the ground that the will contest was fictitious or sham.

Contestants concede that only a person "interested" may maintain a contest to an alleged will, either before or after probate (Prob. Code, §§ 370 and 380; and *Estate of Land,* 166 Cal. 538 [137 P. 246]) and that they had no right to have the question of their interest determined by a jury (*Estate of Land, supra*).

It is claimed, however, that the question whether they were "persons interested" was an issue of fact raised by the pleadings and must be tried by the court, and to bring the matter to trial, compliance with rule 6(a) of the Rules for Superior Courts was not followed, i.e., "No civil case shall be set for trial until it is at issue and unless a party thereto has served and filed a memorandum as provided herein; . . ." It is conceded that no memorandum, as provided by this rule, was filed in this matter. The judgment of dismissal was entered following the hearing on the motion made pursuant to a notice filed on behalf of respondents. Contestants concede that it is within the discretion of the court to control the order of proof and require them first to establish their interest, but argue that the court cannot deny the contestants the right to a trial of the issue of interest on a motion without compliance with the rule above mentioned, unless the granting of such motion can be justified either (1) under Code of Civil Procedure sections 581 to 583; or (2) under the court's inherent power to dismiss sham or fictitious proceedings; or (3) under Code of Civil Procedure section 437c, relating to summary judgments.

Contestants concede that certain cases, such as *Estate of Land, supra,* and *Capital Nat. Bank* v. *Smith,* 62 Cal.App.2d 328 [144 P.2d 665], cited by respondents, uphold the granting of a motion to dismiss after a consideration of the evidence by the trial court in respect to the claimed "interest" of the contestant, but state that they have not discovered any case of a will contest where a motion to dismiss for lack of interest was granted prior to trial.

It is contestants' position that they are "persons interested" only if a prior will can be produced in which they

are named; that that is a question of fact which can be determined only by a trial of that issue and that issue may not be disposed of by motion, citing *Estate of Edelman,* 148 Cal. 233 [82 P. 962, 113 Am.St.Rep. 231]; *Estate of Munfrey,* 61 Cal.App.2d 565 [143 P.2d 414, 144 P.2d 370]; and *Byer* v. *Arguello,* 96 Cal.App.2d 92 [214 P.2d 556].

Section 350 of the Probate Code provides that: "No will shall be proven as a lost or destroyed will unless proved to have been in existence at the time of the death of the testator, or shown to have been destroyed fraudulently or by public calamity in the lifetime of the testator, without his knowledge; nor unless its provisions are clearly and distinctly proved by at least two credible witnesses."

Section 597 of the Code of Civil Procedure provides for the "Trial of Special Defenses Not on the Merits," i.e., that "When the answer pleads that the action is barred . . . or sets up any other defense not involving the merits of the plaintiff's cause of action but constituting a bar or ground of abatement to the prosecution thereof, the court may, upon the motion of either party, proceed to the trial of such special defense or defenses before the trial of any other issue in the case. . . ." (See new legislation on the subject, Code Civ. Proc., § 437c, as amended by Stats. 1953, chap. 908.)

The question of contestants' interest in the estate was not the real issue in the case, and the motion was not directed to the merits of the case. (*Estate of Bily,* 96 Cal.App.2d 333 [215 P.2d 78, 15 A.L.R. 861]; *Estate of Garcelon,* 104 Cal. 570 [38 P. 414, 43 Am.St.Rep. 134, 32 L.R.A 595]; *Estate of Edelman,* 148 Cal. 233 [82 P. 962, 113 Am.St.Rep. 231].)

*Olwell* v. *Hopkins,* 28 Cal.2d 147 [168 P.2d 972], was a case where the court decided the question of the right of a corporation to sue, which was brought on by a motion to dismiss the action. It was heard upon documentary evidence. It was there established that the corporation had no such right, and the court dismissed the action without making any findings, and the judgment became final. Later, plaintiffs brought a similar action and by demurrer it was contended that plaintiffs were bound by the former judgment under the claim of res judicata. The court held that although such issue was properly raised by answer, it refused to reverse the judgment on the ground that to do so would serve no useful purpose since the record of the former action made it clear that plaintiffs could not overcome that defense.

So it may be here said that a reversal of the judgment of dismissal in the instant proceedings would result in no different judgment from that heretofore entered if the trial court followed rule 6(a) *supra.*

It is only reasonable to require that in proving the existence of a lost will, relied upon as establishing the interest necessary to maintain a will contest, the contestants at least must make a prima facie showing that they have some reasonable expectation of being able to probate it in accordance with section 350 of the Probate Code, and to that end, not only to show its existence but to produce two witnesses to its contents. (*Estate of Arbuckle,* 98 Cal.App.2d 562 [220 P.2d 950, 23 A.L.R.2d 372].) The record leaves no doubt that contestants actually had no interest in the estate. They were unable to produce any competent evidence of any prior will. Their own testimony shows that they had never seen any will naming them and had no knowledge of any such will, and were basing their claim upon very vague hearsay. The evidence presented was all that appeared to be available. Everything contestants knew was in their depositions, which were presented at the hearing. Windson's deposition was before the court and counsel had the opportunity to cross-examine him. No competent evidence was produced that would support the finding pertaining to any lost or destroyed will. The deposition of Howard Sherwood adds nothing in support of contestants' claim. The affidavit of Mr. Gray negatives the existence of any last will and testament indicating that contestants were beneficiaries under any other will. Since Windson is dead and his testimony, other than the deposition, would not be available at a subsequent trial, contestants would not be benefited by a reversal of the judgment.

We conclude that the contestants have not been deprived of any substantial right, particularly where they consented to the trial of the issue of contestants' interest by motion. Under such circumstances no useful purpose would be served by going through the usual process of a trial. The modern trend of authority and of legislation is to permit unfounded litigation to be exposed and disposed of at an early stage, rather than subjecting the parties to the delay and expense involved in waiting for and in holding a formal trial. The court did not lack jurisdiction to hear and determine the motion. Whether in a given case a disregard of the rule would amount to a

reversible error or irregularity would necessarily depend on the facts and circumstances of that particular case, and which may be reviewed on appeal. See *White* v. *Superior Court,* 110 Cal. 60 [42 P. 480] ; *Callahan* v. *Hickey,* 63 Cal. 437 ; 7 Cal. Jur. 625, § 36 ; *Helbush* v. *Helbush,* 209 Cal. 758 [290 P. 18] ; and *Capital Nat. Bank* v. *Smith,* 62 Cal.App.2d 328 [144 P.2d 665], where it is said that where formal adherence to a rule of court requiring the filing of a memorandum is waived, an objection to the noncompliance with such rule may not be made for the first time on appeal.

Since the motion to dismiss was brought on by due notice to the parties concerned, and evidence was taken on the subject without objection to the method of procedure, and since contestants were afforded every opportunity to produce any evidence they may have had available to establish this claimed interest in the estate, and since they were not prejudiced thereby nor deprived of any substantial right, they may not now be heard to complain for the first time on appeal that respondents have not fully complied with rule 6(a) of the Rules for Superior Courts. (*Gury* v. *Gury,* 219 Cal. 506 [27 P.2d 758] ; *Baxter* v. *Boston-Pacific Oil Co.,* 81 Cal.App. 187 [253 P. 185] ; 4 Cal.Jur. 10-Yr. Supp. [1943 Rev.], p. 493, § 36.) Although there is authority (*Cunha* v. *Anglo California Nat. Bank,* 34 Cal.App.2d 383 [93 P.2d 572]) for the dismissal of such an action by motion on the ground that it is sham and fictitious, in view of the previous determination it becomes unnecessary to determine whether or not the evidence supports the finding of the court that the will contest was groundless, vexatious, fictitious and sham.

Judgment of dismissal affirmed.

Barnard, P. J., and Mussell, J., concurred.